# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

|  |  |
|---|---|
| ESGS INC., | ) |
| Plaintiff, | ) Case No.: 2:22-cv-01340-GMN-BNW |
| vs. | ) |
| SEVEN MILE FOOD & BEVERAGE, LLC, *et al.*, | ) **ORDER** |
| Defendants. | ) |

Pending before the Court are Defendants Seven Mile Food & Beverage, LLC and David Pisor's ("Defendants'") First and Second Motions to Dismiss, (ECF Nos. 19, 28). Plaintiff ESGS Inc. ("Plaintiff") filed a Response, (ECF No. 24), to Defendants' First Motion to Dismiss, (ECF No. 19), to which Defendants filed a Reply, (ECF No. 25). Plaintiff did not file a Response to Defendants' Second Motion to Dismiss, (ECF No. 28), and the time to do so has passed.

For the reasons discussed below, the Court **GRANTS** Defendants' First Motion to Dismiss and **DENIES** Defendants' Second Motion to Dismiss.[1]

---

[1] Defendants Second Motion to Dismiss argues that dismissal is warranted pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute because Plaintiff failed to promptly obtain counsel following this Court's Order granting Plaintiff's counsel's motion to withdraw. (Second Mot. Dismiss ("MTD") 2:11–25, ECF No. 29); (Order Granting Mot. Withdraw Attorney, ECF No. 27). It is true that a "corporation may appear in federal court only through licensed counsel," *United States v. High Country Broad, Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993), and that the failure to obtain counsel in response to a court order may justify dismissal under Fed. R. Civ. P. 41. *See A3 Energy, Inc. v. Cnty. of Douglas*, No. 3:11-cv-00875, 2013 WL 4518202, at *2 (D. Nev. Aug. 23, 2013). But upon review of the docket, Plaintiff has secured new counsel, and its delay in obtaining said counsel was minimal. Therefore, the Court finds that dismissal under Fed. R. Civ. P. 41(b) is inappropriate. Accordingly, Defendants' Second Motion to Dismiss is DENIED.

## I. BACKGROUND

This case arises from Defendants' alleged breach of contract. Plaintiff is a Nevada corporation with its principal place of business in Nevada. (Am. Compl. ¶ 2, Ex. A to Pet. Removal, ECF No. 1-2). Defendant Seven Mile Food & Beverage, LLC ("Seven Mile") is a Delaware limited liability company. (Pet. Removal ¶ 7, ECF No. 1). Defendant David Pisor ("Pisor") and Timothy Roach ("Roach") are citizens of Illinois and the only two members of Seven Mile. (*Id*. ¶¶ 6–9).

Prior to entering into the alleged contract underlying the present suit, the parties engaged in a series of telephonic and video calls. According to Plaintiff, no communication took place in-person in Nevada. (*See generally* Am. Compl.). Instead, these communications took place virtually, by Zoom, beginning on October 29, 2021, when Mark Krause ("Krause"), Plaintiff's CEO, spoke with Pisor about investing in Plaintiff. (Am. Compl. ¶ 7). According to Plaintiff, Pisor offered to locate "Smart Money" and "secure the right investors to bring in approximately $1,000,000." (*Id*. ¶ 8). In November, Pisor and Roach again expressed by Zoom their interest in investing in Plaintiff. (*Id*. ¶ 9). The parties conducted one additional Zoom meeting, during which Roach explained that only he and Pisor, rather than an investment group, would purchase shares of Plaintiff's stock. (*Id*. ¶ 10). On December 27, 2021, Defendants and Plaintiff purportedly entered into a Common Stock Purchase Agreement (the "Agreement"), whereby Defendants agreed to purchase 3,041 shares of Plaintiff's common stock for $400,000. (*Id*. ¶ 12).

The Agreement was allegedly signed by Pisor as the managing member and owner of Defendant Seven Mile. (*Id*. ¶ 13). Plaintiff posits that Pisor's signature represented that the investment "would be funded by [Defendant Seven Mile] and [Pisor] was responsible for the[ir] performance under the Agreement." (*Id*.). Plaintiff asserts that Pisor fraudulently inserted false information concerning the address and contact information of Defendant Seven Mile into the

1  Agreement, in addition to failing to register Defendant Seven Mile with Nevada's Secretary of
2  State. (*Id*. ¶ 14).

3  Defendants did not provide payment pursuant to the Agreement, which led to Krause
4  requesting a Zoom meeting on January 11, 2022. (*Id*. ¶¶ 17–19). At this meeting, Defendants
5  expressed that they were now only willing to purchase $200,000 in Plaintiff's common stock,
6  and that their payment of an additional $200,000 was contingent on Plaintiff first securing
7  additional investors. (*Id*. ¶¶ 19–20). Despite Plaintiff agreeing to these additional terms,
8  Defendants allegedly refused to sign the amended Agreement. (*Id*. ¶ 21, 23). Plaintiff
9  maintains it rejected investment opportunities due to its reliance on the Agreement. (*Id*. ¶ 16).

10  Plaintiff subsequently initiated the present lawsuit in state court, asserting the following
11  claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing;
12  (3) fraudulent or intentional misrepresentation; (4) negligent misrepresentation; (5) alter-ego;
13  and (6) violation of NRS §86.544 and NRS §86.548. (*Id*. ¶¶ 26–71). Defendants subsequently
14  filed the First Motion to Dismiss, contending that Plaintiff's Amended Complaint should be
15  dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction
16  over them. Alternatively, if the Court determines it has jurisdiction, Defendants additionally
17  argue that dismissal is warranted under Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to allege
18  claims upon which relief can be granted.

19  **II.    LEGAL STANDARD**
20      **A.  Fed. R. Civ. P. 12(b)(2)**

21  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction
22  over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P.
23  4(k)(1)(A)). "Nevada's long-arm statute permits the exercise of jurisdiction on any basis
24  consistent with federal due process." *Elko Broadband Ltd. v. Haidermota BNR*, No. 3:20-cv-
25  00293, at *2 (D. Nev. Mar. 11, 2021) (citing NRS § 14.065(1). The Due Process Clause limits

a state's power to exercise control over a nonresident defendant. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). To protect a defendant's liberty, due process necessities that a nonresident defendant have "certain minimum contacts" with a forum state before that state can exercise personal jurisdiction over that individual or entity. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two types of jurisdiction—general and specific. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). General jurisdiction depends on the defendant's "substantial, continuous and systematic" contracts with the forum, "even if the suit concerns matters not arising out his contacts with the forum." *Id*. Specific jurisdiction exists "where the cause of action arises out of or has substantial connection to the defendant's contact with the forum. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain*, Co., 284 F.3d 1114, 1123 (9th Cir. 2002). If a defendant has sufficient minimum contacts for the court to have personal jurisdiction over the defendant, the exercise of such jurisdiction must also be reasonable. *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987).

Fed. R. Civ. P. 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction. "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "A plaintiff must establish jurisdiction over each defendant individually." *Zuercher v. Hoskins*, No. 4:21-cv-05142, 2021 WL 6551433, at *2 (N.D. Cal. Dec. 16, 2021). The court "may order discovery on the jurisdictional issues." *Unocal*, 248 F.3d at 922 (citing *Data Disc. Inc. v. Sys. Tech. Ass'n, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "When a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand" the motion. *Id*. (citing *Ballard v. Savage*, 65 F.3d

1495, 1498 (9th Cir. 1995)); *see also Data Disc*, 557 F.2d at 1285 ("[I]t is necessary only for [the plaintiff] to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.").

"Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing *Unocal*, 248 F.3d at 922); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). However, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (citations and internal quotation marks omitted).

### B. Fed. R. Civ. 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

As stated, Defendants First Motion to Dismiss invokes both Rule 12(b)(2) and 12(b)(6). The Court will first address Defendants' jurisdictional argument pursuant to Rule 12(b)(2). As Plaintiff does not contest that the Court lacks general jurisdiction over the Defendants, (Resp. 2:23–6:7, ECF No. 24), the Court's inquiry will be limited to examining whether specific jurisdiction exists.

///

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction (or "specific jurisdiction"): (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (analyzing specific jurisdiction under identical framework). The plaintiff bears the burden of establishing the first two prongs. *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff does so, the burden shifts to the defendant to argue that exercise of jurisdiction would be unreasonable. *Id*.

The Ninth Circuit has emphasized that under the first prong of the specific personal jurisdiction test, purposeful availment and purposeful direction are two distinct concepts. "The exact form of our jurisdictional inquiry depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). For claims sounding in contract, courts generally apply the "purposeful availment" analysis, which considers whether a defendant "'purposefully avails itself of the privilege of conducting activities' or 'consummates a transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (quoting *Schwarzenegger*, 374 F.3d at 802). "'For claims sounding in tort' where the alleged conduct took place outside the forum state," courts in the Ninth Circuit apply a "purposeful direction test." *Strayer v. Idaho State Patrol*, No. 21-cv-35247, 2022 WL 685422, at *2 (9th Cir. Mar. 8, 2022) (citation omitted). This test analyzes whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state,

(3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Control Le Racisme Et L'Antisemitisme*, 433 F.3d 1205, 1206 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d at 803).

Because Plaintiff's Amended Complaint sounds in contract (breach of contract, breach of implied covenant of good faith and fair dealing, and alter ego) and tort (fraudulent misrepresentation) both the purposeful direction and purposeful availment tests apply.[2] *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) ("When both contract and tort claims are at issue, both tests are relevant."); *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 819-cv-01298, 2020 WL 9312379, at *3–4 (C.D. Cal. Apr. 22, 2020) (applying both tests where plaintiffs brought "claims sounding in tort, such as fraud, and claims sounding in contract, such as breach of express warranty").

**A. Purposeful Availment**

Although Plaintiff's Response only discusses purposeful direction, the allegations in the First Amended Complaint evidence two potential ways purposeful availment could be shown: (1) the contractual relationship between the parties created by the Agreement; and (2) the negotiations between the parties which preceded the first Agreement and culminated in the amended Agreement. (Resp. 3:15–6:7).

The Supreme Court's opinion in *Burger King Corporation v. Rudzewicz*, serves as a touchstone for contractually related "minimum contacts" inquiries. 471 U.S. 462 (1985). In *Burger King*, the Supreme Court upheld an exercise of personal jurisdiction over the defendant where he "purposefully availed" himself of the laws of the forum state by "entering a contractual relationship that 'envisioned continuing and wide-reaching contacts'" in that state.

---

[2] Plaintiff's Response fails to recognize the distinction between purposeful direction and purposeful availment, instead applying the purposeful direction test to its contract and tort claims. (*See* Resp. 3:15–19) (stating only that "Plaintiff's First Amended Complaint sets forth the basis for jurisdiction and how Defendants purposefully directed their activities").

*Walden v. Fiore*, 571 U.S. 277, 285 (2014) (quoting *Burger King*, 471 U.S. at 479–480). Although courts consider all relevant factors in evaluating purposeful availment, the Supreme Court has identified four factors as particularly instructive: (1) prior negotiations; (2) contemplated future consequences; (3) the terms of the contract; and (4) the parties' actual course of dealing (the "*Burger King* factors"). *Burger King*, 471 U.S. at 479.

Some actions by a defendant may independently satisfy the purposeful availment test, such as direct solicitation of business in the forum state, conducting negotiations in the forum state, or making the forum state's laws the governing law under the contract. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986). Purposeful availment may also be satisfied where the defendant has knowledge that its contractual obligations will have a substantial effect in the forum state. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398 (9th Cir. 1986). However, "merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident." *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).

For the reasons set forth below, the Court finds that Plaintiff has failed to show that Defendants purposefully availed itself of the "privilege of conducting activities" in Nevada. *Schwarzenegger*, 374 F.3d at 802.

### 1. Prior Negotiations

In evaluating the first *Burger King* factor, courts consider facts related to the defendant's solicitation of business in the forum state, the location of contract negotiations, and the location of the defendant's execution of the contract at issue. *See Calltek, Inc. v. Call Center Systems, LLC*, No. 8:18-cv-00384, 2018 WL 2264205, at *6 (C.D. Cal. Apr. 25, 2018) (citing *LocusPoint Network, LLC v. D.T.V., LLC*, No. 3:14-cv-01278, 2014 WL 3836792, at *4 (N.D. Cal. Aug. 1, 2014).

///

First, the entirety of the negotiations between the parties took place by Zoom, and there is no evidence that the Defendants were ever physically in Nevada. (Am. Compl. ¶¶ 7–10, 17–19, 23–25). That Defendants were never physically present in Nevada weighs against a finding of purposeful availment. *See Coast Equities, LLC v. Right Buy Properties, LLC*, 701 F.3d. App'x 611, 613 (9th Cir. 2017) ("The contract negotiations occurred only by phone and e-mail, and we have held that "[t]he making of telephone calls and the sending of letters to the forum state [is] legally insufficient to enable the court to exercise personal jurisdiction over the non-resident defendant.") (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985); *Ayer v. White*, No. 21-cv-08773, 2022 WL 657502, at *3 (C.D. Cal. Mar. 4, 2022) (finding that there was no purposeful availment "all preliminary negotiations took place via electronic communications, and Defendants were never physically present in California at any point during this process."). Second, the facts surrounding the execution of the Agreement do not favor a finding of purposeful availment. Specifically, Plaintiff's Amended Complaint fails to specify that Defendants entered into the Agreement in Nevada. (*See generally* Am. Compl.). Although presumably Plaintiff executed the Agreement in Nevada, "such 'unilateral activity' does not indicate purposeful availment by Defendant[s]." *Calltek, Inc.*, 2018 WL 2264205, at *7 (quoting *LocusPoint,* 2014 WL 3836792, at *5). Accordingly, this factor does not favor a finding of purposeful availment.

### 2. Contemplated Future Consequences

In evaluating the second factor, "future consequences," courts focus on whether the defendant, in entering the contract, created "continuing obligations between [itself] and residents of the forum." *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 789 (9th Cir. 1987). Purposeful availment is not satisfied if the "quality and nature of [the defendant's] relationship to the [forum plaintiff] can . . . be viewed as 'random,' 'fortuitous,' or 'attenuated.'" *Burger King*, 471 U.S. at 480. In *Burger King*, the defendant purposefully availed himself of Florida

law when he entered into a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with [the plaintiff] in Florida," including "exacting regulation of [the defendant's] business" from the plaintiff's Florida headquarters. *Id*. at 480.

Here, the connection created by the parties via the Agreement does not resemble the "*substantial*" connection between the parties in *Burger King*. *Burger King*, 471 U.S. at 479 (emphasis in original). Notably, Plaintiff neither attached a copy of the Agreement or amended Agreement between it and the Defendants, nor an affidavit or declaration attesting to the existence of the contract.³ As a result, the Court is unable to determine the complete contours of the contemplated future consequences created by these contracts. Nevertheless, Plaintiff's Amended Complaint indicates that the Agreement was limited to a one-time deal "whereby Defendants agreed to purchase 3,041 shares of common stock in [Plaintiff] for the purchase of price of $400,000." (Am. Compl. ¶ 12). The amended Agreement, in turn, was also a one-time deal limited to Defendants purchasing $200,000 in common stock with the option of purchasing an additional $200,000 in stock once Plaintiff secured additional investors. (*Id*. ¶¶ 19–20). Rather than commit itself to ongoing obligations, including cooperation, with a citizen of another state, Defendants allegedly entered into an contract which required a one-time investment. *See Calltek, Inc.*, 2018 WL 2264205, at *7 (finding that there was no future contemplated consequences where the "Plaintiff was to make a one-time investment . . . and thereafter receive profits"). Therefore, the "quality and nature" of the contacts between the parties, both anticipated and actual, are simply too attenuated to support a finding of purposeful availment. *Burger King*, 471 U.S. at 480.

---

³ Plaintiff bears the burden to produce "admissible evidence, if believed, would be sufficient to establish the existence of personal jurisdiction." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1107 (C.D. Cal. 1999) (citation omitted); *see Nw. Healthcare All. Inc. v. Healthgrades.Com, Inc.*, 50 F. App'x 339, 340 (9th Cir. 2002) ("When an exercise of personal jurisdiction is challenged, the burden is on plaintiff to demonstrate why the exercise of jurisdiction is proper."). Because Plaintiff has failed to provide a copy of the Agreement, the alleged existence of a contact between it and the Defendants is an even "more tenuous contact." *Clair v. iEnergizer, Inc.*, No. 2:20-cv-01880, 2021 WL 3082562, at *4 (D. Nev. July 21, 2021).

### 3. Terms of the Contract

Terms of contract documents that provide a defendant with "fair notice" that it may be subject to suit in the forum state weigh in favor of a finding of purposeful availment. *Burger King*, 471 U.S. at 463.

Here, this factor militates against a finding of purposeful availment because Plaintiff failed to provide a copy of the Agreement or amended Agreement. The Court cannot assess the terms of a contract that was not provided, and it is Plaintiff's burden to produce "admissible evidence, if believed, would be sufficient to establish the existence of personal jurisdiction." *Colt Studio, Inc.*, 75 F. Supp. 2d at 1107 (citation omitted); *see Nw. Healthcare All. Inc.*, 50 F. App'x at 340 ("When an exercise of personal jurisdiction is challenged, the burden is on plaintiff to demonstrate why the exercise of jurisdiction is proper."). Because Plaintiff has failed to provide a copy of the Agreement or amended Agreement, the alleged existence of a contact between it and the Defendants is an even "more tenuous contact." *Clair v. iEnergizer, Inc.*, No. 2:20-cv-01880, 2021 WL 3082562, at *4 (D. Nev. July 21, 2021). Accordingly, this factor also does not favor a finding of purposeful availment.

### 4. Parties' Course of Dealing

In evaluating the last factor, "course of dealing," courts focus on whether the "substantial and continuing relationship" with the forum resident gave the defendant "fair notice that he might be subject to suit" in the forum." *Burger King*, 471 U.S. at 463. As discussed with "contemplated effects," there is no evidence of substantial cooperation, coordination, or even communication executed in Nevada that could have conveyed to Defendants "wide-reaching" consequences to support a finding of purposeful availment. Accordingly, there is no evidence from the parties' actual course of dealing that supports a finding of purposeful availment.

///

In sum, having reviewed all of the *Burger King* factors, Defendants' contractual relations with Plaintiff "do not constitute purposeful availment of the benefits and protections of [Nevada] law." *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001). Therefore, the Court finds that Plaintiff has not met the purposeful availment test.

### B. Purposeful Direction

As Defendants did not purposefully avail themselves to Nevada, this Court's jurisdiction hinges on whether their actions could constitute purposeful direction into the forum. "'For claims sounding in tort' where the alleged conduct took place outside the forum state," courts in the Ninth Circuit apply a "purposeful direction test." *Strayer*, 2022 WL 685422, at *2. This test analyzes whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (citing *Schwarzenegger*, 374 F.3d at 803). Here, Defendants only dispute that second prong, namely that Plaintiff failed to allege that their conduct was expressly aimed at Nevada. (First MTD 12:24–13:22).

Express aiming "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000); *see also Calder*, 465 U.S. at 788. However, a defendant need not be physically located in the forum state for his actions to be expressly aimed at that forum. *See Burger King*, 471 U.S. at 476. Instead, the relevant inquiry is whether Nevada is the "focal point" of the alleged conduct.

In *Axiom Foods, Inc. v. Acerchem International, Inc.*, the Ninth Circuit explained that, following the Supreme Court's decision in *Walden v. Fiore*, allegations that a defendant knew that a plaintiff resided in the forum and that it was foreseeable that plaintiff would suffer harm in the forum "will not, on its own, support the exercise of specific jurisdiction." *Axiom Foods, Inc.*, 874 F.3d at 1069–70. Rather, express aiming requires that the defendant target the forum

state—merely targeting an individual that happens to reside in the forum state will not satisfy the requirement. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017) ("To establish the basis for specific personal jurisdiction, a tort must involve the forum state itself, and not just have some effect on a party who resides there."); *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1099 (S.D. Cal. 2018) ("The express aiming inquiry requires something more than 'a foreign act with foreseeable effects in the forum state.'").

Considering all the circumstances, Plaintiff fails to establish that Defendants expressly aimed their conduct at Nevada. At its core, Plaintiff alleges only one contact between Defendants and the forum state: the alleged misrepresentations aimed at Plaintiff, a Nevada company. (Resp. 3:18–5:11). But "the plaintiff cannot be the only link between the defendant the forum." *Walden*, 571 U.S. at 285. "[M]ere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290. Thus, that a company located in Nevada may have been harmed by Defendants' alleged actions does not, on its own, suggest that Defendants should reasonably anticipate being haled into court in this state. *Int'l Shoe Co.*, 326 U.S. at 316; *see Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 591 (N.D. Cal. 2022) ("The fact that Plaintiff was living in California when Keystone and the Archwell entities allegedly made fraudulent statements is not enough on its own to satisfy the express aiming requirement under recent Supreme Court and Ninth Circuit authority."). Defendants' knowledge that Plaintiff was a company with its principal place of business in Nevada, standing alone, does not adequately demonstrate that Defendants' "expressly aimed" their conduct at Nevada. *See Moose Run, LLC v. Libric*, No. 2:18-cv-00425, 2019 WL 1261103, at *5 (D. Nev. Mar. 19, 2019) ("[T]he fact that Plaintiff's principals reside in Nevada and received Defendant's communications there is not enough for the express-aiming prong.") (citation omitted).

///

1      Therefore, the Court finds that Plaintiff has failed the first prong of the specific

2 jurisdiction test.  Because the Court finds that Plaintiff has not met either the purposeful

3 direction or purposeful availment tests, Plaintiff failed to make a *prima facie* showing of

4 specific jurisdiction over the Defendants; thus, the Court need not address whether Plaintiff's

5 claim arise out of or relate to the [Defendants'] forum-related activities or whether the exercise

6 of specific jurisdiction would comport with fair play and substantial justice. *See Pebble Breach*

7 *Co.*, 453 F.3d at 1155 ("Here, [plaintiff's] arguments fail under the first prong. Accordingly, we

8 need not address whether the claim arose out of or resulted from [defendant's] forum-related

9 activities or whether an exercise of jurisdiction is reasonable."); *Estate of Daher v. LSH Co.*,

10 575 F. Sup. 3d 1231, 1238–41 (C.D. Cal. 2021) (declining to address the second and third

11 prongs of the specific jurisdiction test after finding plaintiff failed to show defendant

12 purposefully directed its activities to California).   In sum, the Court finds that it lacks

13 jurisdiction over Defendants.[4]

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

---

[4] Because the Court finds it lacks jurisdiction over Defendants, it declines to examines Defendants remaining arguments under Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' First Motion to Dismiss, (ECF No. 19), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Second Motion to Dismiss, (ECF No. 28), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint within twenty-one (21) days of this Order.  Failure to file an amended complaint will result in a final order dismissing this civil action either for want of subject matter jurisdiction or for failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").  If Plaintiff chooses to file an amended complaint, it must cure the deficiencies identified by this Order.

**DATED** this __17__ day of March, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT